UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA ) DOCKET NO. 3:15-CR-105-4
)
vs. )
)
JASON TAYLOR, )
)
Defendant. )
)

TRANSCRIPT OF ARRAIGNMENT AND DETENTION HEARING
BEFORE THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE
MAY 4, 2015

APPEARANCES:

On Behalf of the Government:

DANA OWEN WASHINGTON, ESQ.
United States Attorney's Office
227 West Trade Street, Suite 1700
Charlotte, North Carolina

On Behalf of the Defendant:

AARON E. MICHEL, ESQ.
Law Office of Aaron Michel
3736 Surry Ridge Court
Charlotte, North Carolina

Digitally recorded proceedings transcribed by:

Cheryl A. Nuccio, RMR-CRR
Official Court Reporter
United States District Court
Charlotte, North Carolina

P R O C E E D I N G S

(Transcript of proceedings digitally recorded on May 4, 2015.)

THE COURT: Okay. The next matter we'll take a look at this morning is Jason Taylor. The number on this is 3:15-cr-105.

The calendar does not reflect counsel for Mr. Taylor, although we see Mr. Michel is here today. Good morning.

MR. MICHEL: Good morning, Your Honor. I was just appointed --

THE COURT: Are you appointed to represent him?

MR. MICHEL: -- to represent him last Friday, I believe it was.

THE COURT: Very well. Well, we're glad to have you in the case. Thank you very much.

Mr. Washington is here for the government, of course. And we are here today for arraignment and also for a detention hearing. So let's see what we can do on this today.

Mr. Michel, I know you've only been recently appointed, but is he prepared to go ahead with arraignment today?

MR. MICHEL: Yes, Your Honor. I've met with him a couple times, and he wishes to waive a reading of the indictment and enter a plea of not guilty and requests a jury

trial.

THE COURT: Very well. Madam Clerk, if you'll please show that we did conduct arraignment today for Mr. Taylor. Through counsel Mr. Taylor waived a formal reading of the bill. He entered a plea of not guilty and requested trial by jury. That will constitute his arraignment on these charges and our minutes will so reflect.

We'll get the usual orders issued right away, Mr. Michel. And that will constitute arraignment for Mr. Taylor today.

So let's move ahead to bond on this. Mr. Michel, would you like to be heard on that today?

MR. MICHEL: The report -- the recommendation --

THE COURT: I tell you what, let me hear -- I just wanted to see --

MR. MICHEL: Sure.

THE COURT: -- if you wanted to be heard, so I'll take that as a yes. So let me hear from Mr. Washington.

MR. WASHINGTON: Thank you, Your Honor.

Your Honor, this defendant, Mr. Taylor, was one of the redistributors on the Charlotte end. He was a drug trafficker, obviously part of this organization. He was not one of the leaders or organizers.

Your Honor, the government has thought long and hard about it, looked at the pretrial services report. We believe

he does have some family support here who might be able to ensure that he does the right thing while on supervision. We would agree with the recommendation of home detention and location monitoring for this defendant.

Just to give the Court some idea as to his involvement, as I mentioned, this is a case involving a corridor wiretap. He is on the wiretap. He's on there discussing obtaining narcotics, paying for drugs. He also made deposits into some of these bank accounts that I mentioned earlier.

THE COURT: Okay.

MR. WASHINGTON: His criminal history includes assault and battery, reckless endangerment. He does have those out there. But we believe that with home detention and electronic monitoring, he will comply with conditions of release.

THE COURT: Mr. Michel.

MR. MICHEL: Your Honor, the felony conviction goes back to when he was 19 and back in Poughkeepsie where he was born and raised. And apparently the boyfriend of a cousin attacked his brother and he got involved defending his brother and ended up getting this felony conviction. And the good news is he did well on probation. He complied with the terms of probation, including drug testing. Never came up positive. And was on probation for a number of years. And he was

transferred -- he'd done so well that he was transferred from New York to Virginia where he worked as a sales rep for Xerox for a number of years.

And then he had moved back here, started raising a family. He's got four children. His wife and sister are here. He lives with his sister.

And so we would acknowledge that there's some history there, but ask the Court to take into consideration the circumstances of that.

The information in the report has been verified by his family who's here. And I've talked to them and they are telling me the same thing I see in the report. And they believe he is not a risk of flight or danger to the community if he's released. That he does work. He's got some guys here who he works with who speak highly of him and believe he's a responsible person in terms of working and supporting his family.

Because of the report's recommendation, I don't think I could summarize it any better in terms of he doesn't have any prior drug convictions or any arrests and because of that, because of the stable residence, I agree with the recommendation that it would be appropriate to release him on the unsecured bond with home detention. If the Court wanted his sister or another to cosign, I'm sure they would be willing to do that.

THE COURT: Mr. Michel, you may have said this, but where would he live?

MR. MICHEL: With his sister, Your Honor, at the address shown in the report.

THE COURT: I see that there are a lot of people in the audience. Are these folks here for Mr. Taylor?

MR. MICHEL: Yes, sir.

Would you please stand.

His sister, his wife.

And would you all please identify yourself.

UNIDENTIFIED SPEAKERS: (Inaudible.)

THE COURT: Okay. Thank you very much for coming. Appreciate it.

Mr. Michel, I'm certainly going to give this serious consideration. The -- I always get a little nervous when I see things like a resisting public officer so recently, less than a year ago. I mean, things happen, I suppose, but...

MR. MICHEL: That was a traffic stop where it was also charged that the child wasn't in the rear seat (inaudible) Your Honor, but it was resolved with a fine.

THE COURT: Right.

MR. MICHEL: So --

THE COURT: Okay. Two failures to appear in 2012. Traffic offenses?

MR. MICHEL: Yes, Your Honor. He did take care of

those. It was a matter of getting money together to take care of the matters and being in court to take care of them. Those are the tough situations that ordinarily do not rise to a level of danger to the community, Your Honor.

THE COURT: Okay. Let me take a look here.

(Pause.)

THE COURT: Well, I think I'll follow the recommendation that's been made here.

Madam Clerk, if you will draw up papers, please, reflecting a $25,000 unsecured bond. I'll impose all the usual and normal conditions that apply in our district.

I will add the special condition that you be on home detention with location monitoring consistent with the recommendation. He's not to be released until the location monitoring investigation has been completed.

So Madam Clerk, if you would put those papers together for me. We'll go over those on the record before we conclude.

(Pause.)

THE COURT: Okay. Mr. Taylor, listen carefully, please.

Look, you're presumed innocent until proven otherwise. I'm not suggesting anything to the contrary. But look, man, you are teetering on the precipice here. The evidence in this case is serious. I mean, I heard a couple of

summaries already in co-defendants' cases. So you just need to understand that you're in a very different situation than you've been in some of your previous scrapes with the law. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, the question for today is bond, which is not punishment. It's a decision about whether under the Bail Reform Act I can set terms of release that reasonably assure the safety of the community and your reappearance for court. Based on the recommendation of the parties and my study of your situation, I think that that's possible so I'm going to set a bond for you. I've taken into account a lot of things here, including the presence of your family here to support you. So listen carefully. You'll have a chance to review these papers for yourself, but here's what I'm going to do.

By signing these papers, you're promising to appear at all proceedings as required and to surrender for the service of any sentence in your case.

I'm imposing a $25,000 unsecured bond.

I'm imposing the usual and normal conditions that apply in our district. Those would include the following:

That you report to probation as directed.

That you maintain or actively seek employment.

And that you abide by certain restrictions in your

personal associations, place of residence or travel. Specifically, you can travel only in the Western District of North Carolina or as otherwise approved by the probation office.

You're not to have any contact with anybody involved in the unlawful use, possession or trafficking of drugs or any other unlawful conduct.

You're not to have any contact with anybody who might be a victim or a witness in your case, and that would include your co-defendants. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You're not to possess a firearm, destructive device or other dangerous weapon.

You're not to use alcohol to excess.

You're not to use or unlawfully possess any narcotic drug or other controlled substance unless prescribed by a doctor.

To ensure that you're complying with that condition, you must submit to any testing required by the probation office to determine whether you're using any illegal substances.

If probation determines that it's appropriate, you must comply with any substance abuse therapy, counseling, they recommend.

I am going to place you on home detention with

location monitoring. Your release will not be approved until that has been established in the home where you will be residing.

You must report as soon as possible to probation any contact you have with law enforcement. That would include but not be limited to any arrest, questioning or traffic stop.

Of course, you're not to commit any further federal, state or local crime.

On the final page of these papers is a provision entitled "Advice of Penalties and Sanctions" which, in essence, says that if you violated any of these conditions, you're just asking for a lot more trouble. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So the best thing you can do is to get out, comply with all these conditions, work at your job, and work carefully with Mr. Michel to aid in your own defense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Anything other than that is going to be trouble. Got it?

THE DEFENDANT: Yes.

THE COURT: Okay. Mr. Washington, anything else?

MR. WASHINGTON: No. Thank you, Your Honor.

THE COURT: Mr. Michel?

MR. MICHEL: No, Your Honor.

THE COURT: Okay. Madam Clerk, I'm going to hand these papers down. We'll have the parties who are required to, please sign those papers.

And then when we're ready, Mr. Marshal, we'll move ahead to Sidney Truesdale.

(Pause.)

THE COURT: Thank you, Mr. Michel.

MR. MICHEL: Thank you, Your Honor.

(End of proceedings.)

*****

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CERTIFICATE OF REPORTER

I, Cheryl A. Nuccio, Federal Official Realtime Court Reporter, in and for the United States District Court for the Western District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the digitally-recorded proceedings, transcribed to the best of my ability, held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 26th day of January 2017.

s/Cheryl A. Nuccio

Cheryl A. Nuccio, RMR-CRR
Official Court Reporter