UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA    )   DOCKET NO. 3:15-CR-105-4
                              )
        vs.              )
                              )
JASON TAYLOR,             )
                              )
            Defendant.     )
_____)


TRANSCRIPT OF PLEA AND BOND REVIEW HEARING
BEFORE THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE
NOVEMBER 17, 2015



<u>APPEARANCES</u>:

On Behalf of the Government:

     DANA OWEN WASHINGTON, ESQ.
     United States Attorney's Office
     227 West Trade Street, Suite 1700
     Charlotte, North Carolina

On Behalf of the Defendant:

     AARON E. MICHEL, ESQ.
     Law Office of Aaron Michel
     3736 Surry Ridge Court
     Charlotte, North Carolina


Digitally recorded proceedings transcribed by:


            Cheryl A. Nuccio, RMR-CRR
              Official Court Reporter
          United States District Court
            Charlotte, North Carolina

<u>P R O C E E D I N G S</u>

1         (Transcript of proceedings digitally recorded on November 17, 2015.)

THE COURT:  The next matter we'll take up this morning is Jason Taylor.  The number on this is 3:15-cr-105. Mr. Michel is here today with Mr. Taylor, and Mr. Washington is here for the government on this.  The case is on for plea and Rule 11 today.  There is a plea agreement in the file. The plea agreement calls for a plea of guilty by the defendant to count one in the bill of indictment.

Mr. Michel, is the defendant ready to proceed?

MR. MICHEL:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Taylor, in order for me to accept your plea, I need to ask you some questions; and before I do that, I do need to have you sworn in.  So if you would, please stand, put your left hand on the Bible, raise your right and face the clerk, please.

(Defendant was sworn.)

THE COURT:  You can have a seat there.  Thank you.

Mr. Taylor, a couple things to keep in mind as we go through these questions together.  Keep your voice up for me so that I can hear you.  Also, if you need to talk to Mr. Michel at any time during this proceeding, you should feel comfortable doing that.  Do you understand?

THE DEFENDANT:  Yes.

```
1              THE COURT:  Okay.

2              All right.  Here we go.

3              Do you understand that you're under oath and

4    required to give truthful answers to these questions?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that if you give false

7    information under oath, you can be prosecuted for perjury or

8    false statement?

9              THE DEFENDANT:  Yes.

10             THE COURT:  After consulting with your lawyer, do

11   you want this Court to accept your guilty plea to count one in

12   the bill of indictment?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand you have the right to

15   have a U.S. district judge conduct this proceeding?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Recognizing that right, do you expressly

18   consent to proceed before me, a United States -- hold on a

19   second.

20             Recognizing that right, do you expressly consent to

21   proceed before me, a United States magistrate judge?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Are you now under the influence of

24   alcohol, medicines or drugs of any kind?

25             THE DEFENDANT:  No.
```

1        THE COURT:  Is your mind clear today and do you

2   understand you're here to enter a guilty plea that cannot

3   later be withdrawn?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Have you received a copy of the bill of

6   indictment in your case and have you discussed it with your

7   lawyer?

8        THE DEFENDANT:  Yes.

9        THE COURT:  At this point, Mr. Taylor, I'm going to

10  go over with you the charge contained in the bill of

11  indictment -- actually, the superseding bill of indictment in

12  the case.  Your plea today, as I previously noted, will be to

13  count one in that document.

14        Mr. Washington, I guess technically the plea

15  agreement calls for a plea of guilty by the defendant to count

16  one in the bill of indictment.  The document I have in front

17  of me this morning is a superseding bill of indictment.  Is

18  there any difference between the two?

19        MR. WASHINGTON:  With respect to this defendant,

20  there is none.  The superseding indictment added a defendant.

21        THE COURT:  Okay.  Great.  Thank you.

22        All right.  Mr. Taylor, count one reads as follows,

23  in pertinent part:

24        It's alleged here that from at least as early as in

25  or about 2013 to in or about April 2015, in Mecklenburg

1  County, within the Western District of North Carolina, and

2  elsewhere, you and your co-defendants named here did knowingly

3  and intentionally conspire and agree with each other and with

4  others to distribute and to possess with intent to distribute

5  controlled substances, that is a mixture and substance

6  containing a detectable amount of cocaine, a mixture and

7  substance containing a detectable amount of heroin, and a

8  mixture and substance containing a detectable amount of

9  marijuana, all controlled substances under Schedules II and I

10  respectively, in violation of federal law.

11           With regard to the quantities of these substances:

12           With regard to cocaine, it's alleged in the bill of

13  indictment that with respect to this conspiracy offense

14  charged in count one, 5 kilograms or more of a mixture and

15  substance containing a detectable amount of cocaine was

16  attributable to you and reasonably foreseeable by you and

17  therefore Title 21, United States Code, Section 841(b)(1)(A)

18  is applicable to you for sentencing purposes.

19           With regard to the quantity of heroin involved in

20  this conspiracy offense, it's alleged that with respect to the

21  conspiracy offense charged in count one, a mixture and

22  substance containing a detectable amount of heroin was

23  attributable to you and reasonably foreseeable by you and

24  therefore Title 21, United States Code, Section 841(b)(1)(C)

25  is applicable to you for sentencing purposes.

1    With regard to the amount of marijuana involved, it

2 is further alleged that with respect to this conspiracy

3 offense charged in count one, a mixture and substance

4 containing a detectable amount of marijuana was attributable

5 to you and reasonably foreseeable by you and therefore

6 Title 21, United States Code, Section 841(b)(1)(C) is

7 applicable to you for sentencing purposes.

8    All of this is a violation of the drug conspiracy

9 statute, which is Title 21, United States Code, Section 846

10 and 841(a)(1).

11    Now, based upon the amount of these various drugs

12 involved, the maximum penalty for you for this offense is set

13 forth at paragraph 4 of your plea agreement.  And largely

14 because of the amount of cocaine involved, the maximum penalty

15 that's set forth here in paragraph 4 is as follows:  Not less

16 than 10 years nor more than life imprisonment, a $10 million

17 fine, or both, and a period of supervised release.

18    Mr. Washington, is that correct?

19    MR. WASHINGTON:  That is correct, Your Honor.  Thank

20 you.

21    THE COURT:  All right, sir.

22    So Mr. Taylor, that's the charge you're pleading

23 guilty to and the maximum penalty that could apply to you.

24 Have you talked to Mr. Michel about that?

25    THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand the charge you're

2     pleading to today, including the maximum penalty that could

3     apply to you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Mr. Taylor, I need to ask you a couple

6     of immigration related questions which may or may not apply to

7     you, but these are a standard part of this proceeding and I

8     ask them in every case so I'll ask them in your case as well.

9          Do you understand that if you are not a citizen of

10    the United States, your guilty plea could have adverse

11    immigration consequences?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand that if you're not a

14    citizen, your guilty plea could result in deportation from the

15    country?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that by entering a

18    plea of guilty to a felony charge, you may be deprived, at

19    least for a time, of certain civil rights and that these would

20    include the right to vote, to hold public office, to serve on

21    a jury, and to possess a firearm?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Have you talked to your lawyer about how

24    the U.S. Sentencing Guidelines might apply to your case?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that the district

2   judge will not be able to determine your sentence until a

3   presentence report has been prepared and you've had a chance

4   to comment on that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you also understand that in some

7   circumstances you may receive a sentence that is different,

8   that is either higher or lower than that called for by the

9   guidelines?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand the Court may order

12   restitution or the payment of money by you if that's

13   appropriate in your case?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if the sentence

16   is more severe than you expect or the Court does not accept

17   the government's recommendation, you will still be bound by

18   your plea and have no right to withdraw it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that parole has been

21   abolished and if you are sentenced to a term of imprisonment,

22   you will not be released early on what used to be called

23   parole?

24          THE DEFENDANT:  Yes.

25          THE COURT:  If your sentence includes imprisonment,

1  do you understand the district judge may order a term of what
2  is called supervised release?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you also understand that if you
5  violate the terms of supervised release while out, you could
6  go back to prison for an additional period of time?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand you have the right to
9  plead not guilty, to have a speedy trial before a judge and
10 jury, to summons witnesses to testify in your behalf, and to
11 confront witnesses against you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you exercised your right to trial,
14 you would be entitled to the assistance of a lawyer.  You
15 would not be required to testify.  You'd be presumed innocent
16 and the burden would be on the government to prove your guilt
17 beyond a reasonable doubt.  Do you understand all these
18 things?

19             THE DEFENDANT:  Yes.

20             THE COURT:  In other words, Mr. Taylor, if you
21 wanted to, you could plead not guilty and have a trial.  Do
22 you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  By entering this plea of guilty, you're
25 waiving that right.  There's not going to be a trial.  There

1  will be one more hearing where the district judge will

2  determine what sentence to impose in your case.  Do you

3  understand all of that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Now, we've been over the charge

6  contained in count one in the bill of indictment in the case.

7  The charge there, put simply, is drug conspiracy involving

8  cocaine, heroin, and marijuana.  Have you been over this

9  charge carefully with Mr. Michel?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand the charge?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you guilty of that crime?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  There is a plea agreement in

16 the case.

17             Mr. Washington, do you want to tell us about that.

18             MR. WASHINGTON:   Thank you, Your Honor.

19             Your Honor, the written plea agreement includes the

20 following terms:

21             The defendant agrees to enter a voluntary plea of

22 guilty to count one as set forth in the bill of indictment --

23 as the Court noted, there is a superseding bill of

24 indictment -- and admits to in fact being guilty as charged in

25 that count.  The United States at the appropriate time will

1    move to dismiss count two as to this defendant.

2            Defendant certifies that he understands the

3    potential mandatory minimum and maximum punishment in this

4    case as discussed by the Court.

5            Pursuant to Rule 11(c)(1)(B) of the sentencing

6    guidelines, the parties agree to make the following

7    recommendations at the time of sentencing:

8            The amount of controlled substance known to or

9    reasonably foreseeable by this defendant was at least

10   5 kilograms but less than 15 kilograms of cocaine.

11           The government agrees that the defendant's entry of

12   plea is timely.

13           And the parties agree that either party may seek a

14   departure or variance from the applicable guideline range.

15           The United States will inform the Court and the

16   probation office of all facts pertinent to sentencing and will

17   present any evidence requested by the Court.

18           With respect to procedures, Your Honor, the

19   defendant agrees that a duly qualified federal magistrate

20   judge may conduct the hearing required by Rule 11.  The

21   defendant stipulates that he has read and understood the

22   factual basis filed with this plea agreement and that such

23   factual basis may be used by the Court and the probation

24   office without objection to determine the applicable guideline

25   range in this case.

1      The defendant is aware that the law provides certain
2  limited rights to withdraw a plea of guilty, has discussed
3  them with counsel, and expressly waives any right to withdraw
4  the plea once the magistrate judge has accepted it.
5      Defendant, in exchange for concessions made by the
6  United States in this plea agreement, agrees to waive any
7  right to contest the conviction except for claims of
8  ineffective assistance of counsel or prosecutorial misconduct.
9      Your Honor, with respect to assistance to the United
10 States, the defendant, if requested by the United States,
11 agrees to cooperate with the United States, including
12 providing truthful testimony about the subject charges or any
13 criminal activity within the defendant's knowledge.
14      The defendant understands that nothing in this
15 agreement places any obligation on the United States to seek
16 the defendant's cooperation or assistance.
17      And if the defendant cooperates with the United
18 States, the United States in its sole discretion will
19 determine whether such assistance has been substantial.
20      The defendant understands that if the United States
21 makes a motion for reduction of sentence, that motion is not
22 binding on the district judge.
23      Finally, Your Honor, this agreement is effective and
24 binding once it's signed by all parties, and there are no
25 other agreements, representations or understandings other than

1    those set forth in this plea agreement or noticed to the Court
2    during this hearing.

3              THE COURT:  Thank you very much.

4              Mr. Michel, anything to add?

5              MR. MICHEL:  Nothing to add, Your Honor.

6              THE COURT:  Okay.  Mr. Taylor, let me come back to
7    you, then, for a few more questions.

8              What you heard Mr. Washington provide is a summary
9    of the highlights of your plea agreement.  Each and every
10   provision of that document is important, of course, whether he
11   mentioned it here this morning or not.  Let me begin with this
12   question.

13             Have you been over that plea agreement carefully
14   with Mr. Michel?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that those are the
17   terms of your plea agreement with the government and do you
18   agree with those terms?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You are waiving some rights you have to
21   appeal so let me ask you a couple questions about that.

22             First of all, do you understand that the right to
23   appeal your conviction and/or your sentence has been expressly
24   waived in your plea agreement?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Do you further understand that the right

2     to challenge your conviction and/or your sentence in what's

3     called a post-conviction proceeding has also been expressly

4     waived in your plea agreement?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Is that your signature that appears on

7     the plea agreement?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, Mr. Washington mentioned the

10    factual basis document in the case.  I do have a copy of that

11    in front of me here.  This is document number 106 in the case.

12    It is two pages in length.  It bears the signatures of

13    Mr. Washington on behalf of the government and Mr. Michel on

14    your behalf.  It speaks for itself, of course, but does

15    purport to set forth certain agreed upon facts related to this

16    matter.  Let me ask you a couple of questions about this.

17         First of all, were you aware that this factual basis

18    document had been filed as an attachment to your plea

19    agreement in the case?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Have you read the document or at least

22    had it read to you?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand the document and agree

25    with its contents?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you talked to Mr. Michel about it?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.

5          Now, Mr. Taylor, has anybody threatened, intimidated

6     or forced you to enter your guilty plea today?

7          THE DEFENDANT:  No.

8          THE COURT:  Other than the terms of your plea

9     agreement, has anyone made you promises of leniency or a light

10     sentence to get you to plead guilty?

11          THE DEFENDANT:  No.

12          THE COURT:  Have you had enough time to discuss with

13     your lawyer any possible defenses you might have to these

14     charges?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you satisfied with the services of

17     your lawyer in this case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Is there anything you'd like to say at

20     this time about his services?

21          THE DEFENDANT:  No, he's a great guy.

22          THE COURT:  Have you heard and understood all parts

23     of this proceeding and do you still wish to plead guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you have any questions or statements

1  you'd like to make at this time?

2          THE DEFENDANT:  No.

3          THE COURT:  Just a couple of final things by way of

4  summary here, Mr. Taylor.  What you're doing today, of course,

5  is offering your guilty plea to count one in the bill of

6  indictment in the case.  That's the drug conspiracy charge

7  that we went over earlier during this proceeding.  You're

8  doing that pursuant to the terms of your plea agreement which

9  we've also reviewed here today on the record.

10          Have you talked to Mr. Michel about all this?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Is this what you want to do?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Michel, finally a question for you.

15  Have you reviewed with Mr. Taylor all features of his case,

16  but, in particular, the terms of his plea agreement, and are

17  you satisfied he understands these things and knows what he is

18  doing?

19          MR. MICHEL:  Yes, Your Honor.

20          THE COURT:  All right.  Well, that completes the

21  questions on the form.  Let me review this to make sure I

22  completed this accurately and then I'll get it out to

23  Mr. Michel to have a look at.

24          (Pause.)

25          THE COURT:  Okay.  Mr. Michel, we'll get that out to

1   you momentarily.

2              (Pause.)

3              MR. MICHEL:  It's signed, Your Honor.

4              THE COURT:  Okay.  Thank you.

5              Before I make my final findings on this, let me just

6   ask the lawyers again, this may be much ado about nothing, but

7   does it matter whether he's pleading to the bill of indictment

8   or the superseding bill of indictment, Mr. Washington?  I

9   mean, the superseding bill of indictment is now the charging

10  document in the case, is it not?

11             MR. WASHINGTON:  Yeah, he's pleading to the

12  superseding bill of indictment; but with respect to this

13  defendant, there are no changes between the two.

14             THE COURT:  I understand.

15             Mr. Michel.

16             MR. MICHEL:  He has been arraigned on the

17  superseding, so...

18             THE COURT:  He has been?

19             MR. WASHINGTON:  Yes.

20             THE COURT:  Well, great.  Then that's really just

21  cleaning up my earlier comment.

22             MR. WASHINGTON:  It should say superseding.

23             THE COURT:  Very well.  Thank you.  That's helpful.

24  Then it's clear in the record that his plea is to count one in

25  the superseding bill.  It's also apparently clear that there's

1    been no change with regard to him from the original bill and

2    the superseding bill.  So that takes care of that.

3          All right.  For the record, then, the plea and Rule

4    11 form has now been signed both by the defendant, Mr. Taylor,

5    and also by his counsel, Mr. Michel.  Therefore, based on the

6    representations and answers given both by the defendant and

7    his lawyer in this proceeding, the Court does find that the

8    defendant's plea of guilty is knowingly and voluntarily made,

9    and that the defendant understands the charges, potential

10   penalties, and consequences of his plea.  Accordingly, the

11   defendant's plea of guilty is hereby accepted.

12         Furthermore, the Court will find based on this

13   record that there is a factual basis for the defendant's plea

14   of guilty and our minutes will so reflect.  We'll make the

15   plea and Rule 11 form a part of his file.

16         One housekeeping item to take care of.  Mr. Michel,

17   does the defendant wish to have a presentence interview in his

18   case?

19         MR. MICHEL:  Yes, Your Honor.

20         THE COURT:  All right.  Madam Clerk, if you will so

21   indicate on our usual form, we'll get that out to Mr. Michel

22   to sign for us.

23         (Pause.)

24         MR. MICHEL:  He's signed it.

25         THE COURT:  All right.  Thank you, Mr. Michel.

1          We'll make the form part of his file and inform
2    probation of the defendant's wishes regarding a presentence
3    interview in this matter.
4          I guess that does leave us with a question with
5    regard to the defendant's bond status in light of his plea.
6          Mr. Washington, what is the government's position
7    regarding that matter?
8          MR. WASHINGTON:  He's on home detention with
9    electronic monitoring.  We don't mind him staying as such.
10         MR. MICHEL:  And I think under 3145(c), he is
11   allowed to.  I think the extraordinary circumstances -- first
12   of all, most people aren't out pending the proceedings.  So
13   this starts out as an exceptional situation.  And what he's
14   done while he's been out has been excellent, both in terms of
15   his family responsibilities and in terms of his cooperating
16   with the government.  And in my opinion, he's been
17   extraordinary in every respect.
18         I sat in this courtroom over the last few months and
19   seen two people plead guilty and be allowed to stay out, a
20   white woman and on a separate occasion a white man.  I think
21   Mr. Turnley (phonetic) was the white man and he was helping
22   the trustee manage the assets that had been seized by the
23   government.  And I think that this is a circumstance where he
24   is being very productive while out on pretrial release.
25         I think we start out as an exceptional case.  If you

1    look at the pretrial services report, the probation office
2    recommended his release, and kind of summed the situation up
3    as saying that Mr. Taylor is a 36-year-old resident of the
4    local community who appears to have a stable residence and
5    immediate family ties to the community.  He's currently
6    employed with no mental health or substance abuse history and
7    his criminal record reflects one felony conviction but not
8    drug related.

9          I think the drug related issues and not having
10   substance abuse issues probably helps in terms of his dealing
11   with this aberrant situation and getting back on the right
12   track at an early stage, and doing a number of constructive
13   and specific things to show that he's gotten on the right
14   track.

15         And for those reasons we would ask the Court to
16   recognize these exceptional circumstances and allow him to
17   stay out.  He does have a business to run that he relies upon
18   to support his family.  And I believe that the exceptional
19   circumstances in this case justify his being allowed to remain
20   out, continue to work both with his family and with the
21   government.

22         THE COURT:  Okay.  Ms. Banks, do you have access to
23   his pretrial services report?

24         MS. BANKS:  (Inaudible.)

25         MR. MICHEL:  (Inaudible.)

1          THE COURT:  Okay.  Michelle, how hard would it be to

2    print that?

3          THE CLERK:  (Inaudible.)

4          (Pause.)

5          THE COURT:  Okay.  Mr. Michel, unless I misread the

6    statute, Title 18, U.S. Code, Section 3145(c) requires that

7    the Court find exceptional reasons for the defendant to remain

8    out on bond.

9          The defendant's record includes convictions for

10   misdemeanor menacing in 1999, reckless endangerment in 2003,

11   assault and battery in 2006, resisting a public officer in

12   2014, some traffic offenses.  He has other arrests which did

13   not result in convictions.  He has two failures to appear in

14   2012.  He's now been convicted of drug conspiracy for which he

15   faces a mandatory minimum 10 years to life.

16         So what are the exceptional reasons that would form

17   the basis of the Court's order to allow him to remain out?

18         MR. MICHEL:  Well, these are things that were known

19   at the very beginning and were considered by the Court in

20   determining that he was not a risk of danger to the community

21   or to himself and that he was not a risk of flight, that he

22   would appear in court.  That determination by the Court has

23   already been made.

24         THE COURT:  That's a fair point, but the standard is

25   different.

1    MR. MICHEL:  And once this case is in that posture,
2  then the question is, is there anything else that has happened
3  to detract from that?  And I would contend that in terms of
4  liberty interests, the highest, most important moral values in
5  our society that have the most important consequences to each
6  and every one of us individually and as a society, that
7  unnecessarily detaining somebody, whether it's pretrial or
8  while they're waiting for sentencing, has serious moral issues
9  associated with it as well as consequences associated with it.
10  The consequences alone -- senior moment -- for Mr. Taylor and
11  his family are very great.

12    But as far as liberty interests, the moral value of
13  not taking away somebody's freedom unless it's absolutely
14  required.  I think that it's already been established that
15  he's not a risk of danger or flight, and that he has done well
16  while out on pretrial release, and that this case is an
17  exception in that regard compared to most cases the Court
18  sees.  He has obviously done well since then.  But he's got
19  the extraordinary circumstance that the government does not
20  object to it.  And obviously, if there was any risk in his
21  continuing to be out pending sentencing, the executive branch
22  of government would be jumping up and down, taking a shoe off
23  and banging the desk with it.  But they're in support of his
24  release.

25    And I don't see how the Court can, in weighing both

1   the moral value of liberty as well as the consequences, ignore
2   what the probation office has said about him, ignore what a
3   government branch has said about him in terms of having no
4   objection to his remaining out, and find that he -- that --
5   showing that exceptional circumstances do not apply.  I think
6   they do apply.  I think the evidence is full of that evidence
7   that it applies.
8           And I think that while the statute talks about the
9   burden being, I guess, on a defendant to prove it, I would say
10  that's inconsistent with our concept of liberty.  That our
11  concept of liberty places the burden on the government to
12  show -- present evidence and to show that there's some reason
13  that compels the deprivation of that liberty interest.  And so
14  I would take issue with that part of the statute.
15          But even if one were to put the burden on us, I
16  think that the pretrial report by the probation office is
17  Exhibit A.  The fact that the government has no objection to
18  his being out is Exhibit A and B, Exhibit A and B.  And the
19  fact that he's still out, has not been brought in on concerns
20  that he's not doing what he's supposed to be doing while on
21  electronic monitoring, that's evidence that the exceptional
22  circumstances continue to apply in this case.
23          THE COURT:  Well, Mr. Michael, I'm not trying to
24  give you a hard time.  I'm just -- I'm really asking you a
25  simple question and that is, what are the exceptional reasons

1  why the defendant should remain out?  I'm just asking you to

2  list what they are.  What are they?

3         MR. MICHEL:  The facts stated in the finding by the

4  probation office in the pretrial report is one of them.  The

5  fact that the prosecutor has no objection, the government has

6  no objection to his continuing out is another fact, which I

7  would suggest is an exceptional circumstance.  The fact that

8  he's not had any reports -- been brought back in while he's

9  been on pretrial is another fact.  And I think those are

10  exceptional circumstances.

11         MR. WASHINGTON:  Your Honor --

12         THE COURT:  You know the case law is against you on

13  all that, right?  You understand that?

14         MR. MICHEL:  I read a case that --

15         THE COURT:  Just being real with you.  Just telling

16  you what the case law is.

17         MR. MICHEL:  The *Goforth* case was a drug case.  And

18  there the -- both circuits (inaudible) addressed this issue.

19         So just because this is a drug case, I mean, there

20  seems to be a general bias emanating from Congress about that,

21  and even Congress has been creating a lot of work for

22  everybody over the last 20, 30 years in this war on drugs.

23  And *Goforth* does establish that 3145(c) does provide for his

24  continued release for the exceptional circumstances.

25         Now, if there's a specific case that says that,

1  well, these -- these facts aren't exceptional, then we're
2  happy to consider that, look at that and give the Court our
3  two cents.  (Inaudible.)
4          THE COURT:  Mr. Washington.
5          MR. WASHINGTON:  Judge, I believe that the Court is
6  absolutely correct.  Counsel has to show exceptional
7  circumstances in order to stay out.
8          This individual has been proactively working with a
9  federal agency.  It's been very helpful.  They've been in
10 constant contact with him.  They wanted me to put this hearing
11 off as far as I possibly could.  We're sort of stuck between a
12 rock and a hard place because now he finds himself in court
13 entering his plea and it means that his assistance to them is
14 going to come to an end.  And so I would have the Court
15 consider that.
16         But what the Court is saying with respect to the
17 standard and so forth is absolutely correct.  I do feel my
18 obligation to bring that to the attention of the Court.
19         THE COURT:  All right.  What are his current terms
20 of release?  Standard conditions plus what?  Home detention
21 with location monitoring?  Is that what his current conditions
22 are?
23         MR. MICHEL:  I believe so, Your Honor.
24         THE COURT:  Madam Clerk, do you have access to his
25 current bond papers?  Print those for me.

1      (Pause.)

2      THE COURT:  Thank you.

3      All right.  Taking into account the arguments of the

4  parties and information the Court has from probation regarding

5  the defendant's performance while out, which is very

6  favorable, the Court will allow the defendant to remain out on

7  his current terms of pretrial release pending sentencing in

8  his case.

9      Mr. Taylor, this may seem like a silly thing to

10  mention, but you've gotten two speeding tickets recently which

11  is, believe it or not, bothersome to me.  Don't speed.  You

12  just need to comply with the law while you're out.  Do you

13  understand?

14      THE DEFENDANT:  Yes.

15      THE COURT:  That includes the traffic laws.

16      All right.  That's it.

17      MR. WASHINGTON:  Thank you, Judge.

18      MR. MICHEL:  Thank you, Your Honor.

19      THE COURT:  Good luck, everybody.

20      MR. WASHINGTON:  Thank you, Judge.

21      (End of proceedings.)

22             *****

23

24

25

1   UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF NORTH CAROLINA

3   CERTIFICATE OF REPORTER

4

5

6          I, Cheryl A. Nuccio, Federal Official Realtime Court

7   Reporter, in and for the United States District Court for the

8   Western District of North Carolina, do hereby certify that

9   pursuant to Section 753, Title 28, United States Code, that

10  the foregoing is a true and correct transcript of the

11  digitally-recorded proceedings, transcribed to the best of my

12  ability, held in the above-entitled matter and that the

13  transcript page format is in conformance with the regulations

14  of the Judicial Conference of the United States.

15

16          Dated this 26th day of January 2017.

17

18                          s/Cheryl A. Nuccio

19                          _____
                            Cheryl A. Nuccio, RMR-CRR
20                          Official Court Reporter

21

22

23

24

25